Good morning, your honors. May it please the court, John Hacker for Appellant ACE Property & Casualty Insurance Company. HP purchased a policy entitled Comprehensive General and Automobile Liability Policy 4. A policy like that is generally designed to provide protection from foreign liability, but here the district court held that the policy was properly invoked by HP to cover all the expenses of an affirmative lawsuit brought by HP in the United States. There are a number of errors in that decision addressed in the brief, so I can't cover all of them today. I'd like to focus on two that arise at the threshold, and that is, ACE submits that there is no duty to defend here at all. First, because the new code claims for the policy was ostensibly invoked to defend against all asserted injuries arising outside the foreign coverage territory. And second, the new code claims also did not implicate advertising injury coverage. Well, I guess, I think the policy is really probably, I need to focus on that, because obviously if ACE had undertaken the duty to defend, you have a stronger argument on parsing things out later. But I'm wondering, you know, ambiguity is a little bit of a normative concept, and I recognize that having sat on a number, you know, where we do things, you can get three judges and one says it's unambiguous and two say it's ambiguous or whatever. So it is a little, why would it be unreasonable to find ambiguity in the policy with respect to whether coverage is triggered by the location of an advertising offense versus the location of the injury? Because you have to construe the policy as a whole, and when you look at all of the relevant provisions, each of them, without exception, points only in one direction and not in the other direction. And the direction each relevant provision read together, and against the backdrop of relevant principles, points in the direction that as for the advertising injury coverage, the relevant trigger for coverage is where and when the injury occurred. That's not true for all the coverages, which is a critical point. But let me start with a general proposition. Well, yeah, because obviously if it were so unambiguous and so clear, I would just have thought that ACE would have just shot a letter out right away and say, look at the policy and there's nothing you can tell me that would, there's no coverage under here. And ACE never did that. Well, there was a period of time when ACE, when one can recount the whole story. Well, I know ACE was asking for other documents and all of that. There's other documents, there's a problem. But for me to get to ambiguity, I first look at the policy. I appreciate that. And let's look at the policy. And so if the policy is so clear on its face to everyone, you don't really need anything else. Why do you need something else? Well, certainly as to territorial coverage, the period of time was, you know, a discussion about what it was that ACE had, that HP had, were there other documents that were going to establish something. But by the time the actual decision point was made, HP filed a lawsuit. And that became sort of governing the relationship. And it wasn't ACE's view at that point that it needed to issue a particular response to the tender, because what everybody knew was ACE wasn't defending. There was no defense being offered. So whether we said so or not, that was the reality on the ground. But I can go on and look at the policy. You're not answering the question why they did it for a year and a half or so. I mean, both sides seem to have been pretty inept about it. But we're now asking you for a year and a half or more. They didn't say this is clear out. They just did nothing. Well, with respect, Your Honor, it was, I believe, an 8-month period. And I would also emphasize that whatever ACE did or didn't do doesn't answer for this Court the question, as a matter of law, what does this policy do? You're right. But on both sides, there are behavior that make one wonder. But now we're asking you. You can't explain it too well. But anyway, let's stick with the language and maybe you'll succeed. Let's look at the language. What you have are four different coverages in the policy. And the version of the policy I'm looking at is ER-1661. I think there's a few of them in the ERs. But if you look, first of all, at the covering agreement for property damage and the insuring agreement, excuse me, are at page 1666, you'll see for property damage there's no reference to an offense or it being triggered by where and when the offense occurs. So we know that's true for property damage. You look at advertiser's liability, the relevant one here, there's no reference to it being triggered by where and when the offense occurs. You look at even personal injury liability, and there's no reference there to being triggered by where and when the offense occurs. But then you look at the personal injury liability definition, which appears two pages later in 1668, and you'll see that personal injury is defined in two different groups. There's group A, which is traditional bodily injury, and there's, again, no reference to offense-based coverage there. So for all of the coverages we've discussed so far, there's no reason to think whatsoever, none, that it's based on where and when the offense occurs. Instead, the general rule applicable in all CGL policies as a background rule is that it's triggered where and when the injury occurs. Then you finally get to group B, which is a subset of personal injury liability, and that's for sort of traditional, what you might call true personal injury liability, and that group B in 1668 starts with the phrase, except as provided under coverage C, advertiser's liability. So it carves out of what follows, advertiser's liability, and it goes through the traditional personal injury offenses, and it ends with if such offenses, as described, are committed during the policy period. So that's true personal injury is the one coverage where this policy says, and we know it says because it says so, that it's an offense-based policy triggered by where and when the offense occurs. What you also know is that isn't true for advertiser's liability, again, because the policy tells you that.  And if you look back at the covering, the insuring agreement under advertiser's liability, there's nothing in that that suggests or indicates that it's offense-based either. The phrase appears only with respect to personal injury liability, and so that's the only one that's covered. There's another relevant provision, and that is the policy period condition, which, again, on my ---- What follows from that? What follows from that is that advertiser's liability, like the other coverages, like all the coverages in this foreign policy is triggered only by when and where the injury occurs, not where the offense occurs. There is one coverage in this policy that's triggered by the offense. And what follows from that? And what follows from that is that there's no coverage here because the only allegations in the underlying complaint, the Newcoat complaint, were that Newcoat was injured in the United States. So there's no coverage at all. There's no potential for coverage. Newcoat is only alleging injury outside the coverage territory. Why can't you have activities outside the coverage territories that cause damage inside? You can, absolutely. But the question or the precise question for this point is, for this Court is, under this agreement there's only coverage when the injury occurs inside the coverage territory. And that's what the coverage provisions that I've just discussed establish quite clearly. I mean, did they claim injury in the United States and the conduct, you say, here occurred? I see. Right. But where the conduct occurred for every coverage, all of the coverages in this policy, where the conduct occurred isn't relevant except for one coverage, and that's personal injury liability. It's not true for advertiser's liability. Well, okay. So you have the policy title says foreign, and then you have language that says policy territory and policy period, right? And then you have the policy period provisions that indicate that the coverage is limited to injuries that occur outside the United States, Canada, Cuba, or North Korea. Right? Right. The policy period provisions specifically state that it applies only to such occurrences and personal injury which take place within the policy territory, and refers to occurrences arising out of the insured's advertising activities. That's right. And then, but then the policy defines occurrence as an incident or event including continuous or repeated exposure to conditions which results in bodily injury or property damage. This definition doesn't expressly include advertising injuries, and they're arguing that there's a disconnect between the provisions that I mentioned first. I understand, but there's a complete answer to that in the policy,  which, again, what I'm looking at is 1676 of the ER. Let me read it to you. That's what Your Honor just started with. The policy of the ER, of the principle ER. This policy applies only to such occurrences and personal injury which take place during the policy period and within the policy territory. So again, the policy right there is distinguishing between occurrences and personal injury. Personal injury is an offense-based coverage. Everything else is occurrence-based. So it has to be written that way to say occurrences and personal injury, because personal injury is not occurrence-based. As I just read to you before, it's offense-based, but all the remaining coverages fall within that rubric of occurrences. It would have said occurrences and personal injury and advertiser's liability if advertiser's liability was offense-based. Then the next sentence, Your Honor, clarifies the definition of occurrence. It says if any occurrence arising out of the insured's advertising activities began prior to the policy period or continues after, the liability should be limited to the damages during the policy period. So you know right there the policy is telling you, you can have an occurrence arising out of advertising activity. So ---- Well, if I were to ---- If I believed that the policy was ambiguous as to whether the advertising offense or injury triggers the coverage, does that ambiguity have to be construed in favor of HP under California insurance law? It's true that if the policy overall were ambiguous and were susceptible to reasonable interpretations, then that rule is triggered. But this Court's decisions and the California Court decisions all consistently say that's really a rule of last resort. You use every tool available to make sense of the policy and see if you can come up with one construction that's substantially more reasonable than the other. I submit that the construction that says advertising injury is offense-based confuses and makes sense of all these various provisions. You can't make sense of, for example, the policy period provision, which explicitly says if an occurrence arising out of advertising activities began prior to the policy period, you have to somehow explain why it's offense-based despite that. You have to somehow explain why advertiser's liability is offense-based when the policy goes out of its way, goes out of its way to first say that only personal injury liability is offense-based, doesn't say that with respect to advertiser's liability, and yet goes further and pulls advertiser's liability out of the definition of personal injury liability. You literally cannot explain those at all. There's no explanation available. I just don't understand why it was so clear that that just couldn't be said before. Then the flip side of it is if it were if HP thought they had the coverage, I don't know why they waited three years, too. Well, that's a fair point. I mean, there's both of you that this is that you both argue an ambiguity and a clarity that sort of defies the reality of what's gone on here. And I mean, obviously, the underlying policy of insurance law inures to the benefit of the insured if there's an ambiguity. But both of you are not the typical, you know, that you're not the typical parties here. You know, people would look from the outside and they'd say that, you know, I mean, both of you are people of considerable, you know, abilities to either to make these decisions as opposed to the poor person that, you know, I think that if you deny them the duty to defend, they wouldn't be able to do what HP is capable of doing on their own. So but those are not really they're not issues, but they're all just swirling around this whole thing. I do appreciate that, but I just would emphasize again, this Court has before it a policy. It has to be construed as a matter of law. And what happened in that eight-month period doesn't it just simply doesn't inform that. What did happen in the eight-month period, though, was first of all, after it was simply because Cigna at that time lost its counsel. There was a lawyer that was going to handle it and then there was a conflict and they had to hire a new lawyer. So that explains it wasn't dithering. It was finding a lawyer to handle the matter. And then there was an exchange of correspondence over what additional information HP would provide. And just as the decision point was being reached, HP filed a lawsuit. There's nothing wrong with that. Well, I guess what both of you I know argue is so easy doesn't seem that easy to me. Well, but it's in fairness. If it were so easy, both of you would have probably behaved differently. Well, in fairness, you get, you know, this Court has seen a lot of cases that are disputed contract interpretation, policy interpretation, where, you know, both sides say it's easy and the Court typically doesn't resolve that by saying, well, it must be ambiguous because they're different versions. Now, HP has some domestic policy, though, too, right? They have a fronting policy, as I understand it. Does that have any relevance to that? What did you say there, though? What policy? I believe it's called a fronting policy. I'm not sure it's a complete domestic policy. I guess HP can speak better to that than I can. Did you ever get it? Yes. But it's not an ace policy. Well, is it, if you're looking at all the policies that they have, is it relevant that one appears to be a domestic policy and this one appears to be a foreign policy? I think it's relevant, and it's certainly relevant. Well, if it were that relevant, why aren't you telling me that? I mean, I'm just, I'm just a, you know, an old judge here. The answer comes, as Your Honor started, the answer to the question here comes out of the language of this policy. It doesn't even matter what the domestic policy says. HP was certainly in a position to purchase whatever coverage it wanted for domestic injuries. What it purchased when it looked for foreign policy and paid a premium based on foreign policy was a policy that by its terms cannot be construed any other way sensibly to say that it covers offenses that occur in the coverage territory regardless of the injury.     But, Your Honor, if we could go through, there's a couple of minutes left. Would you like to save that? I would like to save that. Yeah. I was going to turn to the advertising argument. But if, if we're saving longer for rebuttal, we can do that. Thank you, Your Honor. Morning, Your Honor. So the main thing that you need to focus on, of course, is the actual policy language. And you need to look at Endorsement 5. That explains what this policy is. And where is that? Endorsement 5 is attached to the policy, and it points out. Page number? It is page number 514 of the excerpt of record. And the actual policy, it doesn't have a page number. It's only an excerpt of record. I have excerpts of record that starts with 16-something. Yeah. There's different excerpts. It's unfortunately in different places. Well, where is it for us? 544 is a number, HP 699. Is it 1696, maybe? Yeah. Okay. Endorsement 5. And it's the excess and difference in conditions endorsement. Okay. So I have it. It's at 1696. Okay. You're using the same numbering as your opposing counsel. I'm sorry. So what are you focusing on there? The point is that it says it is agreed that the coverage afforded by the comprehensive general liability coverage part shall be excess and difference in conditions to locally admitted policies. The advertising liability coverage was excess, but if there was no You are still reading? No. I am now explaining how it works. And if you look at it, if there is an underlayer that does not afford coverage or if there's no underlying coverage, it drops down. It turns out that advertising liability coverage I have no idea what you just said. Okay. Let me keep reading. The coverage afforded by the comprehensive general liability. Just use English. Okay. What does drop down mean? Oh, it means that if there is coverage on the umbrella policy and there is no coverage on the underlying policy. This is the umbrella policy? It is. It is a form of umbrella as it relates to locally admitted policies around the world. Why did you say this policy? This policy. Right. Because you call it an excess policy and now you're calling it an umbrella policy? It's an umbrella. This is an umbrella provision. And it's excess and difference in conditions endorsement, which gives it an umbrella role where there's no advertising liability coverage in a locally admitted foreign policy. And what happened here. Repeat that in English. Let's say you had a lawsuit in Paraguay and you'd look to local policy in Paraguay. And if that Paraguay policy had advertising liability coverage, it would control. But if it doesn't have that coverage, you'd look to this policy and it would come into play. Okay. So that's its role, its function. It turns out that there was a delay of about eight months from 1999 to 2000. But you were talking about the Endorsement 5. Yes. I'm trying to explain its relevance to the issues. Well, it doesn't seem. Okay. I think the best that you can hope for, you have to have an ambiguity here, right? Because you're not going to get very far with me to tell me that this clearly covers you.  I think it's a very ambiguous policy. It's got lots of strange problems in it. The word occurrence is used in various different ways. So if there's an ambiguity. We win. Well, but what would be, give me your reasonable interpretation of how you have coverage under this. Well, first it's a defense-based policy as to advertising liability. It's true that the word offense isn't used in the definition of advertising liability. But if you actually look at case authority, that is interpreted very similarly. It's all about actually looking at the words of the policy. That's what we're construing. That's right. And then all this language about occurrence is over. That isn't the word exactly used here. I know. It's true the word offense is not used, but every court case. Well, let me draw your attention to 1666, where you promise to pay the insured. If the insured becomes legally obligated to pay as damages occurring in the course of its advertising activities. So the damages have to occur in the course of the advertising activities. And they also have to arise out of one of those enumerated offenses. All right. They have to occur in the course of the advertising activities. Right. Now, when was Newcote advertising abroad? Newcote was the damages occurred in the advertising activity of HP. That's who has to have the advertising. It's our liability. All right. Our conduct. All right. So all right. Yeah. HP's advertising abroad. Right. How does it damage Newcote, which is selling in the U.S.? Because Newcote is not selling only in the U.S. That's a misstatement. That is a factual error that they have made here. Newcote is contemplating sale not only in the U.S., but internationally. Contemplating? Is it selling? It is advertising its products, and it is seeking. Did it sell something? We don't know. We don't know. But how do you suffer damages unless you're actually selling, say, in Europe? Well, the case that explains how that works that's directly on point and is a court of appeal decision that I think in State court of appeal that governs this case is American Cyanamide. The policy there is virtually identical to the one. If you look at the last four policies the Court construed, and in American Cyanamide, the Court said the following. For the policies, do not use the term occurrence in defining the temporal extent of their coverage. Instead, the policies cover offenses committed during the policy period. Here, under the policies in question, the offense is unfair competition. One was prepared to enter the market and intended to do so, but was thwarted by another's monopolistic conduct qualified as an injured party to sue under the Sherman Antitrust Act. And so that's a when, not where distinction. They were talking about when it occurred, not where. But if you look at American Cyanamide, strike out the focus on when and make it the focus on where, you come to the same result as in this case. Was there a claim in the underlying lawsuit? Newport raised a claim for damages abroad. Newport did not limit its liability to any particular territory. It sought damages arising out of all conduct by HP, and it was actively marketing its products, not limited to the U.S., in a way that would implicate potential coverage abroad. And so that's what they haven't been focusing on. And it also dealt with that conduct in a way that can create liability by making all of them.    And they were making sales abroad. And they were making sales abroad. Well, they were selling any sales abroad or any other abroad? They were making sales in, you know, Central America, in Mexico, which is part of North America, which is outside the territory, is within the territory. And that's the --- Are you saying outside or inside? That's within the coverage territory. Yeah. Yeah. Mexico. That doesn't help you. Right. That doesn't help you, right? Yeah. That would count because the point is it's within the coverage territory. But the other thing you've got to look at is that they make a distinction between No, no, no. What? I thought Mexico was excluded. No, Mexico is within the coverage territory because it includes, it only excludes the United States. That isn't quite true. Mexico is North America. Right. Right. And North America is covered under this policy. Correct. That's right. So that's the whole point. Also, but if you look at the Butler v. Clarendon case at 497 F sub second at 1132 note 10, 2007, they make this big distinction that advertising injury coverage is not offense-based here. That case explains why it is. And they say it doesn't exist. And I couldn't find a case that says advertising injury coverage is inherently offense-based. There's another case by Judge Krausky called Mez v. Pacific that's a published court of appeal decision that says the same thing, 76 Calab, 4th, 856 at 865. If you look at the nature of these policies, they say the event-triggering coverage is the commission of the specified offense during the policy period, provided that it's committed in the course of advertising goods, products or services. That's what we have here. And what they ended up learning is that none of those locally admitted policies had any advertising cover, which is typical, and so that the advertising cover that was provided could be worldwide. And if you look at the policy, it says it's worldwide. It doesn't say it's limited to foreign. There's an interesting case that came down, decided by the Seventh Circuit, authored by Judge Posner, that was my last 28-J letter called Ace America, in which Mr. Hacker represented the insured. And in it, they talk about a very different kind of territory restriction that Ace issued later in about, oh, something like 10 years later than this policy. There, it limited coverage to a suit in the U.S., made it very explicit, very clear. That's not this policy. Well, you know, I see people in this field like to talk about offense-based or occurrence-based, but it seems to me those are abstract categories. And what we are asked to do is to interpret the words of a particular policy. Absolutely. I don't disagree. The operative language is damage is occurring. It's not an occurrence. It's damage is occurring. And I don't see how you have shown any damages occurring in the policy period. Well, we have to show there's a potential exposure for damages in order to get a defense for not dealing with an indemnity. How do you show even the potential? Well, we can show the potential because the unfair competition claims asserted against us, you know, by Newcoat, because we were being sued in a counterclaim by Newcoat, were based on our conduct in engaging in what was called FUD, fear uncertainty. And the fear uncertainty campaign was one that we allegedly engaged in, not only in the United States, but in Europe, involving resellers, in North America, within the policy territory. And we did so in allegedly in a way that created a loss of revenue for the  And we did so in a way that created a loss of revenue to Newcoat because it was incapable of addressing those same consumers, because we were questioning their right to buy that ink refill cartridge, because we questioned whether it would destroy the printer. And that's what our communications did, caused, called into question that. The other thing is you have another advertising. Does HP have another advertising policy that covered advertising injury liability for a coverage territory of United States territories in Puerto Rico? Well, we had a fronting policy, and there were some other domestic policies, but they don't pertain here because the other insurance provision wasn't implicated. Because they had an opportunity to argue that whatever we had domestically would make a difference, and it didn't because this policy is not impacted. And it is conceivable that you could have had both coverages implicated, but it doesn't make a difference. But what is the front? What do you mean by fronting policy? It's just a policy to meet statutory guidelines of local jurisdictions, but it's no real insurance because we fully reinsure the carrier who would have that obligation. But it just sort of seems like that you have that HP has all these lawyers that decide coverage to make sure that they have coverage, and it took HP three years and probably a bunch of associates going through these and finally said, aha, maybe we can. No, it didn't. It took them getting sued by me and losing and deciding that they needed to talk to me about better coverage in the future. They had evaluated it and hadn't seen the possibility for coverage because they didn't look at the right policies. The international policies weren't even procured until some six months after the domestic policies were because they were in storage and it took a while to look at them. Just because you have coverage doesn't mean as a corporation you know how to use it and access it. As Judge Becker of the Third Circuit said in Frog Switch, advertising injury coverage has confounded courts for years, and that was a decade ago. This is tricky stuff because of the way the triggers work that are not intuitive. And there's nothing wrong with having duplicative coverage. It happens all the time. That's why you have other insurance provisions to resolve disputes where you have technically duplicative coverage. Here, this coverage is worldwide when you have an offense that is committed in the coverage territory, as our advertising was, from which injury can arise and damages can flow out of. And how if you get to, if it's ambiguous and California law applies here, California courts have held that advertising liability is triggered by the offense, right? Right.  Consistent. Not the injury or the damage. Absolutely. But you have to get past the language of the, but we have to get past the language of the policy. The only thing, this policy is not elegantly written. It should have said, as a lot of similar policies do, use the word offenses which include piracy, unfair competition, et cetera. It didn't. But it's of no moment because the nature of the coverage is the same as those offense-based policies. If you look at that. I have a question before your time is up that I wanted to ask you. Because ACE challenges a lot of the findings of the discovery master or the master, I think, justice Stone. Special master. Yeah. Had they defended, would they be in a better legal position to parse out some of the things that they want? Absolutely. Busty Superior Court in 1997 from our Supreme Court made it very clear that a carrier who defends gets the ability to attempt to allocate. They also could have argued a different applicable rate. There were many benefits that accrued. While they were spending about nine months trying to figure out if the other insurance provision was factually implicated, they should have defended under a reservation then. There's no excuse for this incredible delay in agreeing to defend where they couldn't  And I think that's one of the reasons why the Supreme Court, in the first place, didn't establish absolutely and clearly why there was no potential for coverage. They kept investigating. Well, that means that on first blush, they knew that a defense was possible. They should have defended. They would have had received multiple benefits from that had they done so. The reverse presumption that forces them to have to bear the burden of proof on the basis of the fact that a carrier would have said no before. And I think that's one of the reasons why we lose pretender fees where they denied, because they would have denied anyway. And the case law that we cited I think is clear. Jamestown, Nutmeg follows the same principle in Texas, that if a carrier denies a defense, it would have made no difference if we told them earlier. They would have said no before. And it's not about voluntariness. It's about the fact that they would have said no before and the voluntary payments provision doesn't bar a defense in that circumstance. And I see my time is up. Thank you. Just a few quick points, Your Honor. First of all, Newcoat only alleged sales in the United States. It's at page one, paragraph 132 of the Newcoat complaint. Newcoat wishes to manufacture, market and sell products in the United States that are alleged, et cetera, et cetera. No allegation anywhere, nowhere in the Newcoat complaint that they were selling products outside the United States. It's necessarily true that the injury only could have been in the United States. No allegation that they were contemplating it either? That was the language used by opposing counsel. They were contemplating it. There's not an allegation in the complaint that they were contemplating it. The complaint says they wished to sell only in the United States. There's allegations that the aftermarket was injured, including in Mexico. But Newcoat within that aftermarket was only going to sell in the United States, so its only injuries were in the United States. If you look at the American cyanamide case cited by counsel, it affirmatively helps ACE, not HP. The language that Mr. Gauntlet referred to in American cyanamide, the fourth coverage provision, it's just like the language here with respect to personal injury liability. It says advertisers' liability arising out of an offense committed during the policy period. That's exactly the kind of situation in which it's offense-based. We don't have that language here. You have the opposite language. And the third policy language discussed in American cyanamide is actually almost identical to the language here. And there the Court said that the advertisers' liability in that case was injury-based. So when the language is identical, it's injury-based. And when it's different, like personal injury liability, it's offense-based. The last point I would make with respect to California law is I don't think you'll find anywhere a case, Your Honor, in California law that says advertiser's injury, advertising injury in the abstract is offense-based. All of those cases are talking about a policy language like the language here for personal injury liability that says it applies to an offense committed in the policy. There's nothing abstract. There's no abstract decision saying advertisers' injury generally is offense-based. You have to look at the policy language. And when you look at the policy language here, it invariably points to an injury-based advertisers' liability coverage. Thank you. The case is argued. The case is submitted.
judges: Kozinski, Noonan, Callahan